UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| INTEGRAL CONSULTING INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 1:24-cv-00428-KFW |
| ) | |
| CONTINENTAL SHELF ) | |
| ASSOCIATES INC., ) | |
| ) | |
| Defendant ) | |

**ORDER ON MOTION FOR LEAVE TO FILE THIRD-PARTY COMPLAINT**

Continental Shelf Associates Inc. timely seeks leave to file a third-party complaint (ECF No. 17) pursuant to Fed. R. Civ. P. 14(c), which Integral Consulting Inc. opposes (ECF No. 18). For the following reasons, Continental's motion is granted.

## I. Background

Integral Consulting "provides submersible equipment and expertise to the undersea and offshore exploration industry." Complaint (ECF No. 1) ¶ 2. In November 2023, Integral contracted with AECOM to provide a submersible Sediment Profile and Plan View Imaging camera for exploration and data collection in Machias Bay, Maine, and to provide an on-scene expert, David Browning, to tune the camera and interpret the data it collected. *See id.* ¶¶ 5-6, 9.

Because the camera is not autonomous, AECOM separately subcontracted with Continental "to operate a research vessel with a stern-mounted winch that could transport and deploy the [camera] at various locations in and around Machias Bay." *Id.* ¶ 7. Continental furnished the R/V *Dolphin*, a captain named James Harris to

operate the vessel, and a crewman named James Roth to assist Captain Harris in running the vessel and maneuvering the winch to deploy and recover the camera. *Id.* ¶ 8.

On November 15 and 16, 2023, Continental operated the R/V *Dolphin* throughout Machias Bay and deployed the camera to collect data from the seafloor. *See id.* ¶ 14. On the first day, the vessel and camera operated without incident; however, on the second day, the camera's tether became entangled around a mooring chain or other submerged object. *Id.* ¶¶ 15-16. Captain Harris, at the vessel's helm, and Roth, at the winch, were unable to disentangle the camera. *Id.* ¶ 17. Captain Harris directed Roth and Browning to tie a buoy to the camera's tether so they could cut the tether and mark the location for subsequent retrieval. *Id.* ¶ 18. After Roth cut the tether, but before he and Browning had fastened it to a buoy, Captain Harris maneuvered the vessel away from the area, forcing Roth to drop the tether to avoid tangling his hand in the tightening line. *Id.* ¶¶ 19-20. Integral did not find the camera until June 11, 2024, nearly seven months after it was lost. *Id.* ¶ 22. The camera was ultimately "deemed a total loss due to the corrosive effects of long-term exposure to the marine environment." *Id.* ¶ 23.

On December 12, 2024, Integral filed a complaint in this Court, pursuant to 28 U.S.C. §§ 1332, 1333, and Fed. R. Civ. P. 9(h) alleging that as a direct result of Captain Harris's actions, it suffered damages in the form of the loss of the camera's value, the cost to recover it, and future profits. *Id.* ¶¶ 21-24. Integral brings the

following four counts against Continental: (1) maritime negligence; (2) unjust enrichment; (3) quantum meruit; and (4) maritime bailment. *See id.* ¶¶ 25-43.

Continental filed its answer on April 10, 2025. (ECF No. 11.) Four days later, I issued a scheduling order setting June 30, 2025, as the deadline to amend the pleadings or join parties. ECF No. 12. Continental filed the motion before the Court on June 30, 2025, seeking to implead AECOM and the Conservation Law Foundation (CLF) as third-party defendants. *See generally* Motion; Proposed Third-Party Complaint (ECF No. 17-1). Continental alleges that both the camera's entanglement and its subsequent abandonment were caused by and attributable to AECOM and CLF because (1) they selected the locations at which to deploy the camera, including the location where it became entangled, and (2) AECOM failed to timely retrieve the camera from that location even though Continental's vessel was on standby for two weeks. Motion at 2. Accordingly, Continental contends that, if it is found liable for any or all of Integral's alleged damages, it would be entitled to recovery from AECOM and CLF by way of indemnification and contribution. *Id.* at 2-3.

## II. Legal Standard

The Federal Rules of Civil Procedure provide that in cases where "a plaintiff asserts an admiralty or maritime claim under Rule 9(h), the defendant . . . may, as a third-party plaintiff, bring in a third-party defendant who may be wholly or partly liable—either to the plaintiff or to the third-party plaintiff—for remedy over, contribution, or otherwise on account of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 14(c)(1). A defendant seeking to implead

3

a third-party defendant more than fourteen days after serving its original answer must obtain leave of the court. Fed. R. Civ. P. 14(a)(1).

Whether to grant such leave "is left to the informed discretion of the district court, which should allow impleader on any colorable claim of derivative liability that will not unduly delay or otherwise prejudice the ongoing proceedings." *Lehman v. Revolution Portfolio LLC*, 166 F.3d 389, 393 (1st Cir. 1999). A district court "need not permit a defendant to bring a third-party claim simply because the claim arises out of the same general set of facts as the original plaintiff's claim"; rather, it "may deny a defendant's request for leave when bringing in a third party will introduce unrelated issues and unduly complicate the original suit, or if the third party claim is futile." *Coffin v. Ametek, Inc.*, No. 2:18-cv-472-NT, 2020 WL 3404724, at *1 (D. Me. June 19, 2020) (cleaned up). Overall, a "district court must oversee third-party practice with the core purpose of Rule 14(a) in mind: avoiding unnecessary duplication and circuity of action." *Lehman*, 166 F.3d at 394.

### III. Discussion

Integral argues that impleading CLF and AECOM is improper for three reasons. First, it would unnecessarily complicate the litigation by requiring the Court to interpret contractual agreements between AECOM, CLF, and Continental to resolve the issue of derivative liability, thereby expanding the case from one involving negligence to a contract dispute that would require interpretation of clauses involving indemnification. Opposition (ECF No. 18) at 6-7. Second, it would significantly delay the litigation because the parties have already exchanged "extensive" discovery

documents, and the existing (impending) deadlines would undoubtedly need to be enlarged to allow AECOM and CLF to conduct discovery, and Continental has offered no explanation of why it could not have filed its motion earlier. *Id.* at 4-5. Third, Continental's claim that AECOM and CLF are liable because they selected the locations to deploy the camera is futile because Continental fails to allege that those entities had any operational or technical control over the camera, and the incident could have occurred regardless of the location. *Id.* at 8-9.

Continental counters that its request to implead CLF and AECOM falls within Rule 14's liberal standard because it timely filed its request in compliance with the Court's deadline to join parties or amend the pleadings. Reply (ECF No. 19) at 2. Adding CLF and AECOM is the most efficient way to resolve the current litigation, as Integral's negligence claim against Continental and Continental's related liability claims against CLF and AECOM stem from the same set of facts. *Id.* at 3-4. Finally, Integral's unsupported futility argument does not detract from this Court's prior recognition of contribution and indemnification claims against related parties as colorable under Rule 14. *Id.* at 3 (citing *Coffin*, 2020 WL 3404724, at *2).

As a threshold matter, indemnification and contribution claims involving joint tortfeasors generally "fall within the ambit of Rule 14(a)," and are "typically available under Maine law." *Coffin*, 2020 WL 3404724, at *2 (collecting cases). Therefore, Continental's claims against CLF and AECOM are at least facially colorable.[1]

---

[1] Relatedly, because Integral cites no authority to support its futility argument, *see* Opposition at 8, I consider it waived, *see United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

I also conclude that impleading CLF and AECOM will not cause undue delay. Continental's motion was timely, and this matter is still in the early stages of litigation—Integral admits that it has not yet scheduled depositions—and Integral has not identified any prejudice that would result from enlarging deadlines to accommodate discovery that CLF and AECOM might seek. *See* Opposition at 5; 6 Mary Kay Kane & Howard M. Erichson, *Federal Practice and Procedure* § 1443, Westlaw (database updated May 20, 2025) (explaining that "[t]he mere enlargement of the time required for the trial of the case" is an insufficient ground for denial of impleader "since it probably is offset by the savings achieved by avoiding a second action"); *cf. Coffin*, 2020 WL 3404724, at *2 (concluding that impleading a third-party defendant would unduly delay litigation where the parties had already "engaged in lengthy discovery," filed notices of intent to move for summary judgment, and participated in a Local Rule 56(h) conference, and introducing the third-party defendant would "likely require a reopening of discovery and a staying of deadlines").

Finally, while impleading CLF and AECOM introduces a contractual dispute, I cannot conclude that interpreting those contracts to resolve derivative liability will unduly complicate this litigation. Continental's intended claims against CLF and AECOM for indemnification and contribution are primarily based on the same facts as the underlying negligence action brought by Integral. Granting leave promotes judicial economy and efficiency by allowing these related claims to be tried in the same case, as opposed to a second action where Continental could assert the same claims based on the same facts against CLF and AECOM. *See Phila.*

*Contributionship Ins. Co. v. Bullfrog Spas, Int'l LC*, No. 1:25-cv-01213-JMC, 2025 WL 1952512, at *1 (D. Md. July 16, 2025); *Cf. Coffin*, 2020 WL 3404724, at *3 (concluding impleader would prejudice the plaintiff by introducing three new legal issues that did not implicate the original claims in the late stages of a case that had been pending since 2018).

## IV.  Conclusion

For the foregoing reasons, Continental's motion for leave to file a third-party complaint is **GRANTED**.

Dated: October 9, 2025

/s/ Karen Frink Wolf
United States Magistrate Judge